STATE OF NORTH CAROLINA v. SCOTTIE TERRILL BAILEY *

No. COA02-511

(Filed 1 April 2003)

**1. Possession of Stolen Property— stolen vehicle—sufficiency of evidence—circumstantial evidence**

There was sufficient evidence of possession of stolen goods and possession of a stolen vehicle where defendant was found driving a Suburban several hours after it was stolen, defendant claimed that the vehicle belonged to a friend but would not give the friend's name, the employee driving the company-owned Suburban testified that he had not given anyone permission to drive the vehicle on that day, and defendant was found with the employee's keys. Although the evidence of knowledge that the vehicle was stolen was circumstantial, the rule for determining sufficiency of evidence is the same for circumstantial or direct evidence.

**2. Appeal and Error— plain error analysis—not necessary**

A plain error analysis was inappropriate for the introduction of testimony concerning drug paraphernalia being found on one of the passengers in a stolen vehicle where the challenged testimony did not constitute error at all.

**3. Constitutional Law— right to remain silent—defendant's assertion—officer's testimony**

A defendant's Fifth Amendment rights were not violated by admission of testimony that he refused to answer questions after hearing his Miranda rights where the testimony was not solicited by the prosecutor and was merely offered in response to a question about the chronology of events surrounding defendant's

arrest, there was no further reference to defendant asserting his right to remain silent, and there was strong evidence of defendant's guilt.

**4. Constitutional Law— double jeopardy—possession of stolen property and possession of stolen vehicle—same stolen vehicle**

Sentences for possession of stolen goods and possession of a stolen vehicle based on possession of the same stolen Suburban violated double jeopardy. Although one requires proof of a fact which the other does not, the Legislature did not intend to punish defendant twice for possession of the same property. While defendant could be indicted and tried for both offenses, he could be convicted only once, and the conviction for possession of stolen goods was vacated.

**5. Sentencing— habitual felon—plea transcript—court's response**

Defendant was properly adjudicated an habitual felon where the trial court simply said "okay" after going through the transcript of the plea with defendant. The necessary inquiries were made; while "okay" was not the most appropriate choice of words, it signified the court's approval of the stipulation of defendant's guilt.

Appeal by defendant from judgment entered 9 October 2001 by Judge James E. Ragan in Wayne County Superior Court. Heard in the Court of Appeals 30 January 2003.

*Attorney General Roy A. Cooper, III, by Assistant Attorney General Elizabeth F. Parsons, for the State.*

*Jeffrey Evan Noecker for defendant-appellant.*

HUNTER, Judge.

Scottie Terrill Bailey ("defendant") appeals his convictions and sentencing for possession of stolen goods, possession of a stolen motor vehicle, and being an habitual felon. We conclude defendant was properly adjudicated as an habitual felon; however, defendant's convictions for both possession offenses violated double jeopardy thereby requiring this Court to vacate his conviction for possession of stolen goods and remand this case to the trial court for resentencing.

On 6 August 2001, defendant was indicted by a Wayne County Grand Jury for possession of stolen goods and possession of a stolen motor vehicle (01CRS003182). Defendant was also indicted for being an habitual felon (01CRS007464) due to three prior felony convictions. Defendant's trial began on 8 October 2001, during which the following evidence was introduced.

On the morning of 2 April 2002, Tony Crain ("Crain") drove his company's vehicle, a black 2000 Chevrolet Suburban ("the Suburban") with a vanity tag that read " '1 ALLIED,' " to meet with a customer at a construction site in Raleigh, North Carolina. Upon arriving at the site, Crain parked the Suburban and left his keyring in the driver's seat. While conferring with the customer at a distance of approximately thirty feet from the Suburban, Crain noticed a man ride by on a bicycle. As Crain walked back towards the Suburban approximately fifteen minutes later, he saw the vehicle being driven away. He had not given anyone permission to drive the Suburban. A bicycle was found lying on the ground near where the Suburban had been parked.

The Suburban was equipped with OnStar, a computer tracking and roadside assistance system. Thus, Crain immediately called OnStar and reported the vehicle had been stolen. He also called the Raleigh police. Crain told the police he was unable to identify the bicyclist whom he believed had stolen the Suburban.

By that afternoon, the Suburban was spotted in Goldsboro, North Carolina, by Officer Dorothy Ardes ("Officer Ardes"). She and several other Goldsboro police officers pulled the Suburban over without incident. As Officer Ardes approached the vehicle, she saw defendant in the driver's seat and two other passengers in the Suburban. Defendant informed the officer that he had gotten the Suburban from a friend (whose name he would not give) and that he was in Goldsboro visiting his child. When defendant and the passengers asked why they had been stopped, the police indicated that the vehicle had been reported stolen.

Upon receiving confirmation that defendant was driving the stolen Suburban, the police placed him under arrest. Pursuant to the arrest, the police searched defendant and the two passengers. Crain's keyring, which included the Suburban key and Crain's residence key, was found in defendant's possession. Over defendant's objection, Officer Ardes and another officer, Officer Raymond Yeager ("Officer

Yeager"), testified that drug paraphernalia was found on one of the passengers. Officer Yeager also testified, over defendant's objection, that defendant invoked his right to remain silent after being read his *Miranda* rights.

Following the presentation of all the evidence, the trial court instructed the jury on the charges of felony possession of stolen goods, i.e. the Suburban, and felony possession of a stolen motor vehicle, also the Suburban. The jury returned with two guilty verdicts for these Class H felonies.

Thereafter, the trial court and the attorneys discussed the previously obtained habitual felon indictment, the existence of which had not been revealed to the jury prior to its verdicts on the possession offenses. Defense counsel indicated that defendant was prepared to admit his habitual felon status in order to forgo a second trial. However, the court stated that it was necessary to first go through a transcript of plea because defendant's stipulation alone was insufficient. Following his review of the transcript of plea in the courtroom, defendant pled guilty to being an habitual felon. This Class C felony conviction and defendant's two Class H felony convictions were consolidated for judgment as part of a plea agreement. Defendant was sentenced to a term of seventy-three months to ninety-seven months in the North Carolina Department of Corrections. Defendant appeals.

I.

[1] We first consider defendant's third assignment of error regarding whether the trial court erred in failing to dismiss both possession charges against him due to insufficiency of the evidence.

To withstand a motion to dismiss for insufficient evidence, the trial court is to consider the evidence in the light most favorable to the State, which entitles the State "to every reasonable intendment and every reasonable inference to be drawn from the evidence[.]" *State v. Earnhardt*, 307 N.C. 62, 67, 296 S.E.2d 649, 653 (1982). The evidence considered must be "substantial evidence (a) of each essential element of the offense charged, or of a lesser offense included therein, and (b) of defendant's being the perpetrator of the offense." *Id.* at 65-66, 296 S.E.2d at 651. Whether the evidence presented is substantial is a question of law for the court. *State v. Stephens*, 244 N.C. 380, 384, 93 S.E.2d 431, 433 (1956).

A defendant charged with possession of stolen property under G.S. 14-71.1 or possession of a stolen vehicle under G.S.

20-106 may be convicted if the State produces sufficient evidence that defendant possessed stolen property (i.e. a vehicle), which he *knew or had reason to believe* had been stolen or taken.

*State v. Lofton*, 66 N.C. App. 79, 83, 310 S.E.2d 633, 635-36 (1984) (emphasis added). Defendant contends his motion to dismiss these charges should have been granted because there was insufficient evidence establishing that he "knew or had reason to believe" the Suburban was stolen. We disagree.

The evidence offered in the case at bar consisted of the following: (1) Defendant was found driving the Suburban several hours after it was stolen; (2) defendant claimed the vehicle belonged to a "friend," but would not give that friend's name; (3) Crain testified that he had not given anyone permission to drive the Suburban on the day in question; and (4) defendant was found with Crain's group of keys in his possession. This evidence establishing defendant's knowledge or reasonable belief that the Suburban was stolen was circumstantial at best because Crain could not identify defendant as the bicyclist whom he believed stole his vehicle. Nevertheless, "the rule for determining the sufficiency of evidence is the same whether the evidence is completely circumstantial, completely direct, or both." *State v. Wright*, 302 N.C. 122, 126, 273 S.E.2d 699, 703 (1981) (citations omitted). Regardless of the circumstantial nature of the evidence in this case, a strong inference can be deduced that defendant knew or had reasonable grounds to believe the vehicle was stolen. Therefore, the trial court did not err in denying defendant's motion to dismiss and submitting the case to the jury.

II.

[2] Defendant assigns plain error to testimony given by Officers Ardes and Yeager concerning drug paraphernalia being found on one of the passengers in the Suburban. Defendant contends that although his objection to that portion of each officer's testimony was sustained, his failure to move to strike or request an instruction that the jury disregard it may have resulted in the jury associating one illegal act with another, especially in the absence of "strong" evidence establishing defendant's guilty knowledge or reasonable belief that the Suburban was stolen. We disagree.

A prerequisite to our engaging in a "plain error" analysis is the determination that the instruction complained of constitutes "error" at all. Then, "[b]efore deciding that an error by the trial

court amounts to 'plain error,' the appellate court must be convinced that absent the error the jury probably would have reached a different verdict."

*State v. Torain*, 316 N.C. 111, 116, 340 S.E.2d 465, 468 (1986) (quoting *State v. Walker*, 316 N.C. 33, 39, 340 S.E.2d 80, 83 (1986)). In light of (1) defendant's objection being sustained, (2) our analysis regarding defendant's third assigned error, and (3) clear evidence that the drug paraphernalia was *not* found on defendant, we fail to ascertain how the challenged testimony in this case constituted error at all. Thus, a "plain error" analysis is inappropriate.

### III.

[3] Next, defendant argues his Fifth Amendment rights were violated by the admission of evidence that he refused to answer questions after being read his *Miranda* rights. "[A] defendant's exercise of his constitutionally protected rights to remain silent and to request counsel during interrogation may not be used against him at trial. However, such a constitutional error will not warrant a new trial where it was harmless beyond a reasonable doubt." *State v. Elmore*, 337 N.C. 789, 792, 448 S.E.2d 501, 502 (1994) (citations omitted). We conclude the court's error in the instant case was harmless beyond a reasonable doubt.

During the trial, Officer Yeager testified that after defendant was read his *Miranda* rights and signed a waiver form acknowledging that he understood those rights, Officer Yeager "asked [defendant] did he wish to answer any questions . . . and he indicated no, he did not." Defendant contends the State improperly elicited this testimony from Officer Yeager. However, the officer's testimony was not solicited by the prosecutor, but was merely offered in response to a question requesting a chronology of the events surrounding defendant's arrest. Moreover, the record does not indicate that further reference was made at any other time during the trial to defendant asserting his post-arrest right to remain silent. Finally, as discussed earlier, there was strong circumstantial evidence establishing defendant's guilt. Therefore, any violation of defendant's constitutional right to remain silent was *de minimis*, resulting in defendant's argument being overruled. *See id.*

### IV.

[4] Defendant also argues his sentence offends double jeopardy because his convictions for possession of stolen goods and posses-

sion of a stolen vehicle were both based on his possession of the Suburban. We agree.

The Double Jeopardy Clauses of "[b]oth the Fifth Amendment to the United States Constitution and Article I, Section 19 of the North Carolina Constitution protect against multiple punishments for the same offense." *State v. Fernandez*, 346 N.C. 1, 18, 484 S.E.2d 350, 361 (1997). When analyzing multiple offenses for double jeopardy purposes, our United States Supreme Court has held that "where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of an additional fact which the other does not." *Blockburger v. United States*, 284 U.S. 299, 304, 76 L. Ed. 306, 309 (1932). However, the presumption raised by what is referred to as the *Blockburger* test:

> [I]s only a federal rule for determining legislative intent as to violations of federal criminal laws and is neither binding on state courts nor conclusive. When utilized, it may be rebutted by a clear indication of legislative intent; and, when such intent is found, it must be respected, regardless of the outcome of the application of the *Blockburger* test.

*State v. Gardner*, 315 N.C. 444, 455, 340 S.E.2d 701, 709 (1986). "The traditional means of determining the intent of the legislature where the concern is only one of multiple punishments for two convictions in the same trial include the examination of the subject, language, and history of the statutes." *Id.* at 461, 340 S.E.2d at 712.

In the case *sub judice*, defendant was convicted of possession of stolen property (the Suburban) pursuant to Section 14-71.1 and possession of a stolen vehicle (the Suburban) pursuant to Section 20-106. As previously stated (and further detailed here):

> The elements of a violation of G.S. 14-71.1 are: (1) possession of personal property, (2) which has been stolen, (3) the possessor knowing or having reasonable grounds to believe the property was stolen, and (4) the possessor acting with a dishonest purpose. The elements of a violation of G.S. 20-106 are: (1) possession of a vehicle, and (2) the possessor knowing or having reason to believe the vehicle has been stolen or unlawfully taken.

*State v. Craver*, 70 N.C. App. 555, 559, 320 S.E.2d 431, 434 (1984) (citations omitted).

When considering the subject of these statutes, it is clear that the Legislature sought to address a defendant's illegal possession of another's property. Yet, the language of the statutes clearly indicates their central focus is different because one "requires proof of an additional fact which the other does not." *Blockburger*, 284 U.S. at 304, 76 L. Ed. at 309. The offense of possessing a stolen motor vehicle specifically requires a finding that the stolen property being possessed was a motor vehicle. Conversely, the offense of possessing stolen goods does not require that one of the "goods" stolen was actually a motor vehicle. Additionally, statutory history reveals Section 20-106 was enacted as part of the Motor Vehicle Act of 1937 to "discourage the possession of stolen vehicles by one who knows it is stolen or has reason to believe that it is stolen." *State v. Rook*, 26 N.C. App. 33, 35, 215 S.E.2d 159, 161 (1975). Sixty years later, our Legislature neither amended nor repealed Section 20-106, choosing instead to enact Section 14-71.1 to discourage the possession of *any* stolen property regardless of whether that property was a motor vehicle. *See generally State v. Perry*, 305 N.C. 225, 287 S.E.2d 810 (1982). Thus, the distinctions in language and history between the two statutes suggest the Legislature intended possession of stolen goods and possession of a stolen vehicle to be separate crimes.

The fact that these possession statutes represent two separate and distinct offenses for which a defendant may be punished does not mean however that he is so punishable when possession of the same property is at issue. As our Supreme Court held in *Perry*, although "a defendant may be indicted and tried on charges of larceny, receiving, and possession of the same property, [our Legislature intended that he] be *convicted* of only one of those offenses." *Id.* at 236-37, 287 S.E.2d at 817 (emphasis added). The Supreme Court reasoned that the Legislature did not intend to punish a defendant for possessing or receiving the same property which he himself stole. *Id.* By analogizing *Perry* to the present case, we also reason that the Legislature did not intend to punish a defendant for possession of the same property twice. Thus, while defendant could have been indicted and tried pursuant to Section 20-106 and Section 14-71.1 based on his possession of the stolen Suburban, he could only have been convicted once for possession of it.

Accordingly, since both possession statutes have the same class and record level, we vacate defendant's conviction under Section 14-71.1 because defendant's unlawful possession of a stolen vehicle is exactly the type of crime Section 20-106 was enacted to discourage.

V.

[5] Finally, defendant argues the trial court erred in entering a judgment against him based on his being an habitual felon. Specifically, defendant contends he was never properly adjudicated as an habitual felon because the trial court simply stated "[o]kay" after going through a transcript of the plea with defendant. Defendant further contends the judgment form contained fatal errors because it failed to indicate defendant was adjudged an habitual felon or that his punishment class was being enhanced from Class H to Class C. Defendant asks this Court to remand his case to the trial court with directions to vacate his habitual felon adjudication and re-sentence him as a Class H felon.

With respect to defendant's first contention, this Court holds that although a defendant's status as an habitual felon should be determined by a jury, a defendant may chose to enter a guilty plea to such a charge. *See State v. Gilmore*, 142 N.C. App. 465, 471, 542 S.E.2d 694, 699 (2001). However, a trial court may not accept a defendant's plea of guilty as an habitual felon without first addressing the defendant personally and making the following inquiries of that defendant as required by Section 15A-1022 of our statutes:

(1) Informing [the defendant] that he has a right to remain silent and that any statement he makes may be used against him;

(2) Determining that he understands the nature of the charge;

(3) Informing him that he has a right to plead not guilty;

(4) Informing him that by his plea he waives his right to trial by jury and his right to be confronted by the witnesses against him;

(5) Determining that the defendant, if represented by counsel, is satisfied with his representation;

(6) Informing him of the maximum possible sentence on the charge for the class of offense for which the defendant is being sentenced, including that possible from consecutive sentences, and of the mandatory minimum sentence, if any, on the charge; and

(7) Informing him that if he is not a citizen of the United States of America, a plea of guilty or no contest may result in depor-

tation, the exclusion from admission to this country, or the denial of naturalization under federal law.

N.C. Gen. Stat. § 15A-1022(a) (2001).

Here, the necessary inquiries needed to establish a record of defendant's guilty plea were asked by the trial court, resulting in defendant's guilt as an habitual felon being duly stipulated. *See State v. Williams*, 133 N.C. App. 326, 330, 515 S.E.2d 80, 83 (1999). The trial court's response of "[o]kay[,]" although not the most legally appropriate word choice, signified the court's *approval* of this stipulation when considering the word's plain meaning. *See* Webster's New Word Dictionary 418 (2nd ed. 1987). Further, defendant's sentence clearly suggests he was adjudicated an habitual felon because the sentence was within the presumptive range for someone with a prior record level I convicted of a Class C felony with a prior record level I and not a Class H felony. *See* N.C. Gen. Stat. § 15A-1340.17(c), (e) (2002).

Defendant's second contention pertains to the judgment form's failure to indicate that he was adjudged an habitual felon or that his punishment class was being enhanced to Class C. However, this Court need not address this contention of defendant's because, having vacated one of his convictions, we remand defendant's case to the trial court for resentencing.

In conclusion, defendant was properly adjudicated as an habitual felon, but erroneously convicted twice for possession of the same stolen property. Thus, defendant's conviction of possession of stolen goods must be vacated and his case remanded to the trial court for resentencing.

Vacated in part and remanded for resentencing.

Judges McGEE and CALABRIA concur.