STATE OF NORTH CAROLINA
v.
SCOTTIE TERRILL BAILEY
No. COA08-307
Court of Appeals of North Carolina
Filed November 18, 2008
This case not for publication
Attorney General Roy Cooper, by Assistant Attorney General Scott Stroud, for the State.
Daniel F. Read for defendant-appellant.
Bryant, Judge.
Scottie Terrill Bailey (defendant) appeals from judgments entered upon jury verdicts finding him guilty of possession of a stolen vehicle and driving while license suspended, and upon his plea of guilty to attaining the status of an habitual felon. We find no error.

Facts
On 9 April 2007, defendant was indicted for possession of a stolen motor vehicle, driving while license revoked, and for obtaining the status of an habitual felon. On 23 July 2007, superseding indictments were returned charging defendant with possession of a stolen motor vehicle, driving while license suspended, and obtaining the status of an habitual felon. Yet another superseding indictment was returned on 13 August 2007, charging defendant with obtaining the status of an habitual felon. Defendant filed a motion to dismiss the habitual felon indictment on 10 September 2007. The motion was denied during the 8 October 2007 term of criminal court.
The State's evidence at trial tended to show that around 7:25 on the morning of 27 February 2007, Keiana Hankins went outside and started her car, a burgundy Chrysler, then went back inside her apartment to get her children ready to leave. While making a phone call, Ms. Hankins looked out of a window in her home and saw that her car was no longer parked outside. She called her boyfriend Demetrius Hinton, who told her to call the police. Ms. Hankins called the police and within five minutes an officer arrived at her home. Ms. Hankins gave a description of her car to the officer. Ms. Hankins had not given anyone other than Mr. Hinton permission to use the car.
After speaking to Ms. Hankins, Mr. Hinton began driving around to try and find Ms. Hankins' car. After driving around on a few different roads, he spotted Ms. Hankins' car being driven towards him. He recognized defendant as the driver of the car because the two had been previously acquainted. Mr. Hinton turned his car around and began to follow defendant. Both cars were traveling over the speed limit, and Mr. Hinton described defendant's driving as "erratic." At some point during the chase, Mr. Hinton saw a police car turn on its lights and began to pursue defendant. When defendant cut through a parking lot, Mr. Hinton remained on the road hoping to cut off defendant at an intersection. Defendant and the police officer passed behind Mr. Hinton, who continued on his way, and turned around and began looking for defendant. Mr. Hinton spotted the burgundy Chrysler sitting on a sidewalk next to a fence. Mr. Hinton recognized Ms. Hankins' grandfather walking his dog nearby, who indicated that defendant had jumped over the fence. Mr. Hinton climbed over the fence and saw defendant attempting to change his clothing.
Detective Jeffery Scott Caldwell testified he was the officer who joined the chase of defendant on 27 February 2007. He was driving an unmarked car when he saw two cars traveling through a parking lot at high speeds. Detective Caldwell pulled his car behind the burgundy Chrysler and activated his lights and siren. He observed that the driver of the vehicle was wearing a toboggan and a bright orange hunting jacket. The chase continued at a high rate of speed until they neared a hospital, at which point Detective Caldwell withdrew from the chase for safety reasons and remained about a block and a half behind the Chrysler. When the Chrysler turned onto another street, Detective Caldwell followed the car. He saw an individual who was walking a dog and pointing west bound. Detective Caldwell observed the vehicle had been driven over a curb, into a fence, and abandoned. Beyond the fence, Detective Caldwell saw defendant running north. Defendant was still wearing the bright orange jacket and a toboggan. Detective Caldwell radioed his communication center, gave a description of defendant, then continued drive in the direction defendant had been running. The detective saw Mr. Hinton and defendant, got out of his vehicle, and placed defendant in custody. Defendant was no longer wearing the jacket; the jacket was recovered by the fence not far from Ms. Hankins' car. Evidence was presented showing that as of 28 March 1998 defendant's license was indefinitely suspended. At the close of the State's evidence, defendant moved to dismiss the charges for insufficient evidence; the trial court granted the motion as to the charge of operating a motor vehicle to elude arrest and denied the motion as to the charges of possession of a stolen vehicle and driving while license revoked.
Defendant presented evidence that he lived with his brother and his brother's girlfriend, that he was at home the morning of the incident until at least 7:15 a.m., and that he had to be at school by 8:00 a.m.
At the close of all the evidence, defendant renewed his motion to dismiss; the motion was denied. The jury returned a verdict of guilty on both remaining charges. Defendant thereafter pleaded guilty to having attained the status of an habitual felon. The trial court sentenced defendant as an habitual felon to an active term of 105 to 135 months. Defendant appeals.
Defendant contends the trial court: (I) violated defendant's right to be protected from double jeopardy by failing to dismiss defendant's habitual felon indictment; (II) erred in denying defendant's motion to dismiss; (III) erred by refusing to instruct the jury on a lesser included offense; and (IV) erred in sentencing defendant as an habitual felon in that the sentence constitutes cruel and unusual punishment.

I
Defendant first argues that his right to be free from double jeopardy was violated because the same felony used to support the habitual felon indictment in this case had already been used to elevate defendant to an habitual felon status in a previous case. We disagree.
Defendant concedes this issue has been decided against his favor, and that the habitual felon statute has been upheld as constitutional. See State v. Misenheimer, 123 N.C. App. 156, 472 S.E.2d 191 (1998), review denied, 344 N.C. 441, 476 S.E.2d 128 (1996), and State v. Glasco, 160 N.C. App. 150, 585 S.E.2d 257 (2003), disc. review denied, 357 N.C. 580, 589 S.E.2d 356 (2003). Further, once habitual felon status is attained, it is never lost. State v. Creason, 123 N.C. App. 495, 498, 473 S.E.2d 771, 772 (1996), aff'd per curiam, 346 N.C. 165, 484 S.E.2d 525 (1997). Established case law controls our decision on this issue. This assignment of error is overruled.

II
Next, defendant argues the State failed to present sufficient evidence of possession of a stolen motor vehicle and that the trial court erred in failing to allow defendant's motion to dismiss on that charge. Specifically, defendant contends the State failed to present sufficient evidence to show that defendant knew the car was stolen. We disagree.
In deciding upon a motion to dismiss for lack of sufficient evidence, the evidence must be viewed in the light most favorable to the State, including all reasonable inferences that may be drawn therefrom. State v. Scott, 356 N.C. 591, 596, 573 S.E.2d 866, 869 (2002) (citation omitted). Any contradictions or discrepancies in the evidence are for the jury to resolve and do not warrant dismissal of the case. Id.
Substantial evidence must be presented as to each element of the offense charged, and of defendant being the perpetrator of the offense. Id. at 595, 573 S.E.2d at 868. "'Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" State v. Jarrett, 137 N.C. App. 256, 262, 527 S.E.2d 693, 697 (2000) (quoting State v. Jacobs, 128 N.C. App. 559, 563, 495 S.E.2d 757, 760-61 (1998), disc. review denied, 348 N.C. 506, 510 S.E.2d 665 (1998)). Evidence may be direct, circumstantial, or both, and as long as it substantially supports "' a finding that the offense charged has been committed and that the defendant committed it, the case is for the jury and the motion to dismiss should be denied.'" State v. McNeil, 359 N.C. 800, 804, 617 S.E.2d 271, 274 (2005) (quoting State v. Butler, 356 N.C. 141, 145, 567 S.E.2d 137, 140 (2002)).
The elements of possession of a stolen motor vehicle pursuant to N.C. Gen. Stat. § 20-106 (2007) are (1) possession of a stolen motor vehicle (2) that defendant knew or had reason to believe had been stolen or unlawfully taken. State v. Bailey, 157 N.C. App. 80, 83-84, 577 S.E.2d 683, 686 (2003). Sufficient evidence was presented from which the jury could conclude that defendant possessed Ms. Hankins' car and that he had reason to believe the car was stolen. The evidence tended to show that the owner of the car did not authorize anyone to take it, defendant was identified as the person who was driving the car not long after the car was reported stolen, he led both Mr. Hinton and a police car on a high-speed chase, and he was observed jumping out of the car and fleeing. This evidence, taken in the light most favorable to the State, constitutes sufficient evidence to allow the jury to determine that defendant knew he possessed a stolen vehicle. The trial court did not err in denying the motion to dismiss. This assignment of error is overruled.

III
Defendant also contends the trial court erred in refusing to instruct the jury on the lesser included offense of misdemeanor unauthorized use of a motor vehicle. Defendant argues the evidence is ambiguous regarding whether defendant knew that the vehicle was actually stolen, and that the vehicle could have been stolen by someone else who then gave it to defendant to use. We disagree.
Where evidence supports an instruction on a lesser included offense, it is reversible error for a trial court to refuse to give that instruction. State v. Peacock, 313 N.C. 554, 330 S.E.2d 190 (1985). However, "[w]here the State's evidence is clear and positive as to each element of the offense charged and there is no evidence showing the commission of a lesser included offense, it is not error for the judge to refuse to instruct on the lesser offense." Id. at 558, 330 S.E.2d at 193.
The evidence tends to show that defendant was positively identified as the person driving Ms. Hankins' vehicle, and Ms. Hankins testified she had not given permission to anyone to take her car. Defendant presented no evidence to support his contention that he was not aware the car was stolen, such that an instruction on the lesser included offense was required. This assignment of error is overruled.

IV
Finally, defendant contends his sentence enhancement due to being an habitual felon constitutes cruel and unusual punishment for such a minor crime. We disagree.
Defendant notes he has not committed any new crimes since 2001, was attending community college at the time of the current offense, and received a sentence of almost nine years for what he characterizes as "taking a joy ride." However, habitual felon sentencing has been previously upheld as constitutional. State v. Todd, 313 N.C. 110, 326 S.E.2d 249 (1985). Defendant's prior convictions that served as a predicate for defendant to be charged with attaining the status of an habitual felon were: (1) felony breaking and entering; (2) felony possession of a stolen motor vehicle; and (3) felony possession of a stolen automobile. Defendant's suggestion that his crime was so minor as to make the punishment grossly disproportionate is unpersuasive, particularly where defendant has now been convicted twice of the same crime. See State v. Clifton, 158 N.C. App. 88, 95, 580 S.E.2d 40, 45, cert. denied, 357 N.C. 463, 586 S.E.2d 266 (2003) (one factor to consider when determining whether a sentence is grossly disproportionate is defendant's history of felony recidivism). We find no merit to defendant's assignment of error.
No error.
Judges TYSON and ARROWOOD concur.
Report per Rule 30(e).