An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA13-1299

NORTH CAROLINA COURT OF APPEALS

Filed: 20 May 2014

STATE OF NORTH CAROLINA

v.                                    Guilford County
                                      No. 12CRS078767
SOLOMON LEE-WARREN GRAVES


Appeal by defendant from judgment entered 19 July 2013 by Judge Lindsay R. Davis, Jr. in Guilford County Superior Court. Heard in the Court of Appeals 18 March 2014.

> *Attorney General Roy Cooper, by Special Deputy Attorney General Elizabeth Leonard McKay, for the State.*
>
> *Richard Croutharmel, for defendant-appellant.*


HUNTER, Robert C., Judge.

Solomon Lee-Warren Graves ("defendant") appeals from judgment sentencing him to 28 to 43 months imprisonment after being convicted on one count of assault inflicting serious bodily injury and one count of assault on a female. On appeal, defendant argues that: (1) he received *per se* ineffective assistance of counsel when his trial attorney admitted to elements of the charged offenses in his opening statement to the

jury; (2) the trial court abused its discretion by denying defendant's request for a jury instruction on the defense of automatism; (3) defendant received ineffective assistance of counsel because his trial attorney failed to recognize or preserve the defense of automatism; and (4) the trial court erred by punishing defendant for both assault inflicting serious bodily injury and assault on a female for the same conduct.

After careful review, we find no error in the trial proceedings, but we vacate the conviction for assault on a female and remand for resentencing.

**Background**

The State's evidence presented at trial tended to establish the following: at the time of the incident forming the basis of this case, defendant and Tonya Michelle Stewart Graves ("Tonya") were married and living in Tonya's mother's house with Tonya's 13-year-old son born from a previous marriage. On 26 May 2012, defendant and Tonya got into a verbal altercation. Defendant accused Tonya of harboring feelings of affection for her former husband, the father of her 13-year-old son. Tonya attempted to diffuse the situation by driving away from the house with her son, but defendant blocked her way to the car and knocked her car keys out of her hand. Tonya and her son went on a walk

instead; when they returned home, Tonya took a prescribed sleeping medication and fell asleep in her son's room.

At around 2:00 a.m., defendant woke Tonya and again accused her of talking to other men. Tonya went to her bedroom and started listening to a voicemail that had been left on her cellphone. Defendant then snatched the phone from Tonya's ear and started punching her in the head repeatedly. Tonya fell to the floor and tried to cover herself; after defendant ended his attack he paced the floor and said "look what you made me do." Tonya testified that she did not strike defendant at any time during this encounter, not even to defend herself. Tonya went into the bathroom to assess her injuries. She heard defendant say "I'm sorry" as she was walking away. Tonya testified that when she looked in the mirror, she saw part of her eye hanging out of its socket. Defendant suggested that she go to the hospital. However, he told Tonya not to tell anyone that he struck her, apparently because defendant was in law school at the time and did not want to miss any classes.

Defendant called the police and they arrived at the scene shortly thereafter. Tonya let the police into the home. After seeing her injuries, the police arrested defendant. Defendant told the police that he was a sovereign citizen and that if he

wanted to beat his wife, he could. He never told the officers that Tonya struck him first, that she attacked him, or that he blacked out. Tonya testified that defendant was "very well aware of what was going on" when the police arrived and that his primary concern was that he would not be able to take his law classes if he was arrested. Tonya was taken to the hospital after the ambulance arrived. Her right eye socket had been broken and required surgical insertion of a plastic-coated titanium mesh to support the eyeball.

Defendant took the stand in his own defense at trial and testified that, contrary to Tonya's recitation of the facts, it was actually she who initiated the altercation. According to defendant, Tonya was talking on the phone in an "almost sexy" and "seductive" manner to a man. When defendant grabbed the phone to ask who the man was, she swung her arms at his face "like a wildcat." Defendant tried to block her attack, but she connected with defendant's face, causing him to black out. The next thing defendant recalled was being on opposite sides of the bed from Tonya and seeing her bent down and bleeding. Defendant called 911 to get an ambulance. When the police arrived, he did not want to let them in, but Tonya allowed them to enter the house. As he was being arrested, defendant informed the

officers that he was a sovereign national and that he was "reserving his rights" as a free citizen.

A month before trial began in July 2013, defendant's trial counsel filed a notice of self-defense. At trial, defense counsel's opening statement included the following:

> We believe the evidence will show that Solomon Lee-Warren Graves is a father, a husband, and a minister, and most importantly, a victim, a victim of adultery, a victim of betrayal, a victim of a breach of love. And most importantly, because of that, he had to defend himself on Sunday, May 27, 2012. He had to defend himself against who? That woman right there. [Indicating Tonya.] And we believe the facts will show that his defense of himself was reasonable on that night, and that's why he's here today.
>
> Now, we will admit that the evidence will show Mr. Graves was responsible for the injury to Ms. Stewart Graves. We will admit, and the evidence will show, that because of those injuries, she had to go to the hospital. But, we will also show you, ladies and gentlemen of the jury, that –

The trial court interrupted defense counsel at this point of the statement and ordered the jury out of the courtroom so that the judge could conduct a hearing pursuant to *State v. Harbison*, 315 N.C. 175, 337 S.E.2d 504 (1985), *cert. denied.*, 476 U.S. 1123, 90 L. Ed. 2d 672 (1986). Defendant told the trial judge that he had not authorized his attorney to admit to any wrongdoing;

rather, he reiterated that he was blacked out when the injuries to Tonya were inflicted. Defendant's trial counsel told the judge that he was under the impression that such an admission was authorized because defendant elected to assert self-defense. The trial court found that counsel did not admit guilt but "quite to the contrary" stated that defendant was not guilty of any crimes and was only admitting to causing injury to Tonya.

At the charge conference, defense counsel requested instructions on both self-defense and automatism, but the trial court denied the request and instructed on neither defense. The jury convicted defendant for one count of assault inflicting serious bodily injury and one count of assault on a female. Defendant gave notice of appeal in open court.

## Discussion

### I. Defense Counsel's Opening Statement

Defendant first argues that his attorney admitted guilt to elements of the charged offenses in his opening statement without defendant's consent, constituting *per se* ineffective assistance of counsel under *Harbison*, 315 N.C. at 180, 337 S.E.2d at 507-08. We disagree.

A *Harbison* error occurs where defense counsel makes the decision to concede guilt to a crime without the defendant's

knowing and voluntary consent. *See Harbison*, 315 N.C. at 180, 337 S.E.2d at 507-08. *Harbison* errors amount to *per se* ineffective assistance of counsel under the Sixth Amendment and require a new trial. *State v. Matthews*, 358 N.C. 102, 109, 591 S.E.2d 535, 539 (2004). However, our Supreme Court has declined to find a *Harbison* violation where defense counsel did not expressly concede defendant's guilt or where counsel admitted only certain elements of the charged offense. *See State v. Gainey*, 355 N.C. 73, 93, 558 S.E.2d 463, 476 (holding that there was no *Harbison* error where defense counsel stated, "if he's guilty of anything, he's guilty of accessory after the fact," because the statement did not amount to an admission of guilt to murder), *cert. denied*, 537 U.S. 896, 154 L. Ed. 2d 165 (2002); *State v. Fisher*, 318 N.C. 512, 532-33, 350 S.E.2d 334, 346 (1986) (no *Harbison* error where defense counsel conceded malice but did not clearly admit guilt and told the jury it could find defendant not guilty).

Here, defense counsel's statements that defendant was "responsible" for Tonya's injuries and that she had to go to the hospital because of those injuries are not express concessions of guilt of either of the crimes charged. Each of the charged offenses contains elements not admitted to during defense

counsel's opening statement. *See* N.C. Gen. Stat. § 14-32.4 (2013) (requiring medical conditions that constitute "serious bodily injury" for the crime of assault inflicting serious bodily injury); N.C. Gen. Stat. § 14-33(c)(2) (2013) (requiring the defendant to be a male at least 18 years of age to convict for assault on a female). Thus, because defense counsel admitted only certain elements of the charged offenses, he did not concede defendant's guilt in violation of *Harbison*. *See Fisher*, 318 N.C. at 532–33, 350 S.E.2d at 346. Further, these comments were made after defense counsel explicitly told the jury that defendant was relying on the affirmative defense of self-defense to establish that he was not guilty of these crimes. An affirmative defense is "[a] defendant's assertion of facts and arguments that, if true, will defeat the plaintiff's or prosecution's claim*, even if all the allegations in the complaint are true*." Black's Law Dictionary 9th ed. 482 (emphasis added). Thus, defendant could still have presented an effective defense even after admitting to causing Tonya's injuries.

Because defense counsel did not concede guilt to the crimes charged without defendant's consent, we conclude that he did not

commit a *Harbison* error and was therefore not *per se* ineffective under the Sixth Amendment. Defendant's argument is overruled.

## II. Defense of Automatism

Defendant next argues that the trial court abused its discretion by denying defense counsel's request for an instruction on automatism and that defendant was denied effective assistance of counsel by defense counsel's failure to preserve this defense. We disagree with both contentions.

"[I]f a specifically requested jury instruction is proper and is supported by the evidence, the trial court must give the instruction, at least in substance." *State v. Jenkins*, 35 N.C. App. 758, 760, 242 S.E.2d 505, 506 (1978). However, the question of whether a requested instruction is proper under the evidence is within the discretion of the trial judge "since he can more accurately determine those instances when the instruction would be appropriate." *Id.* (citation and quotation marks omitted). Thus, we review the trial court's refusal to give a requested jury instruction for abuse of discretion. *State v. Harris*, 306 N.C. 724, 728, 295 S.E.2d 391, 393 (1982). An abuse of discretion only arises "where the court's ruling is manifestly unsupported by reason or is so arbitrary that it could not have been the result of a reasoned decision." *State*

*v. Campbell*, 359 N.C. 644, 673, 617 S.E.2d 1, 19 (2005) (quotation marks omitted). We review allegations of ineffective assistance of counsel using a two-part test: whether defense counsel's performance was deficient, and whether this deficiency prejudiced the defendant. *State v. Fletcher*, 354 N.C. 455, 481, 555 S.E.2d 534, 550 (2001) (citing *Strickland v. Washington*, 466 U.S. 668, 687-88, 80 L. Ed. 2d 674, 693 (1984)).

The defense of automatism has been defined by our Supreme Court as:

> the state of a person who, though capable of action, is not conscious of what he is doing. It is to be equated with unconsciousness, involuntary action [and] implies that there must be some attendant disturbance of conscious awareness. Undoubtedly automatic states exist and medically they may be defined as conditions in which the patient may perform simple or complex actions in a more or less skilled or uncoordinated fashion without having full awareness of what he is doing.

*State v. Fields*, 324 N.C. 204, 208, 376 S.E.2d 740, 742 (1989) (citation and quotation omitted). Thus, "the absence of consciousness not only precludes the existence of any specific mental state, but also excludes the possibility of a voluntary act without which there can be no criminal liability." *Id.* (citations omitted).

In determining whether an instruction on automatism is warranted, "[t]he test . . . is whether the evidence of defendant's mental condition is sufficient to cause a reasonable doubt in the mind of a rational trier of fact as to whether the defendant has the ability to form the necessary specific intent." *State v. Connell*, 127 N.C. App. 685, 692, 493 S.E.2d 292, 296 (1997). A trial court may only give instructions that are supported by a reasonable view of the evidence. *State v. Lampkins*, 283 N.C. 520, 523, 196 S.E.2d 697, 699 (1973).

The holding in *State v. Morganherring*, 350 N.C. 701, 517 S.E.2d 622 (1999), *cert. denied*, 529 U.S. 1024, 146 L. Ed. 2d 322 (2000), is instructive here. In *Morganherring*, the Supreme Court analyzed the defendant's argument that the trial court erred by failing to instruct on automatism as follows:

> Even though defendant claims not to remember all of his actions during the murders, *there is no evidence in the record which indicates that defendant was either unconscious or not conscious of his actions*. For example, immediately after killing Ms. Pena, defendant gathered up several items of Ms. Pena's property with the intent to sell them. *Defendant was also able to describe in detail his activities on the days between the murders and the immediate events surrounding Ms. Lee's murder.* . . . [B]ecause defendant failed to present evidence which would support an instruction on automatism, the trial court did not err in refusing to instruct the jury as to that

> defense. This assignment of error is overruled.

*Morganherring*, 350 N.C. at 733-34, 517 S.E.2d at 641 (emphasis added). Furthermore, in *State v. Boyd*, 343 N.C. 699, 714-15, 473 S.E.2d 327, 335 (1996), the Supreme Court held that where the only evidence that the defendant blacked out stemmed from his own testimony at trial and that testimony was contradicted by the State's evidence that the defendant admitted to his actions to the police on the day of the crime, the trial court did not err by declining a request to instruct on automatism.

Here, the only evidence presented that tended to indicate defendant lost consciousness during the altercation with Tonya was defendant's own testimony. This testimony was directly refuted by the State's evidence that defendant admitted to assaulting Tonya and told one of the arresting officers that "he had struck [Tonya] because she was on the phone with another man." Tonya also testified that defendant told the officers "I'm a sovereign citizen. I don't have to go by the rules of the United States. And if I want to beat my wife, I can." The officers testified that at no time during this conversation did defendant deny having assaulted Tonya or claim to have been struck by Tonya, black out, or lose consciousness. Tonya testified that defendant struck her repeatedly in a fit of

anger, apologized immediately after doing so, pleaded that she not tell anyone that he struck her, and was wiping blood from his knuckles when the police arrived.

Because defendant's testimony supporting an instruction on the defense of automatism was directly refuted by evidence presented by the State, we find no abuse of discretion in the trial court's decision not to instruct on that defense. *See Morganherring*, 350 N.C. at 733-34, 517 S.E.2d at 641; *Boyd*, 343 N.C. at 714-15, 473 S.E.2d at 335.

We also hold that defense counsel's presentation and attempt to assert the defense of automatism did not amount to ineffective assistance of counsel. The trial court noted in its *Harbison* hearing that defense counsel was not precluded from asserting the defense of automatism under N.C. Gen. Stat. § 15A-905(c)(1) (2013) because the time limit for notifying the State of defendant's intention to assert that defense had not yet run. At trial, defense counsel elicited testimony from defendant in an effort to establish that defendant blacked out during the altercation and therefore could not form the mental state to commit the charged crimes. At the close of the evidence, defense counsel specifically requested that the trial court instruct on the defense of automatism based on this testimony.

In sum, we believe defense counsel's performance was not deficient because he preserved the defense of automatism and proceeded to elicit testimony in support of that defense, a course of action we deem to be objectively reasonable in this case. *See State v. Allen*, 360 N.C. 297, 316, 626 S.E.2d 271, 286 (2006). Defendant was not deprived of effective assistance of counsel solely because that evidence was insufficient to support the requested instruction.

## IV. Sentencing

Defendant's final argument is that the trial court reversibly erred by sentencing defendant for both assault inflicting serious bodily injury and assault on a female. We agree.

The State contends that defendant's argument amounts to a constitutional Double Jeopardy issue, and because defendant did not present this argument to the trial court, he has failed to preserve it for appellate review. *See State v. Tirado*, 358 N.C. 551, 571, 599 S.E.2d 515, 529 (2004). However, defendant claims, and we agree, that he is alleging failure of the trial court to abide by the statutory mandates contained in N.C. Gen. Stat. §§ 14-32.4(a) and 14-33(c). Such arguments are preserved notwithstanding defendant's failure to object on this specific

ground at trial. *See State v. Ashe*, 314 N.C. 28, 39, 331 S.E.2d 652, 659 (1985) ("[W]hen a trial court acts contrary to a statutory mandate and a defendant is prejudiced thereby, the right to appeal the court's action is preserved, notwithstanding defendant's failure to object at trial."). Thus, we will address the merits of defendant's argument.

Defendant was convicted for one count of assault inflicting serious bodily injury under section 14-32.4 and one count of assault on a female under section 14-33(c)(2). Assault on a female carries the punishment of a Class A1 misdemeanor; assault inflicting serious bodily injury carries punishment of a Class F felony. N.C. Gen. Stat. § 14-32.4(a); N.C. Gen. Stat. § 14-33(c). Both statutes allow for sentencing under their respective provisions "[u]nless the conduct is covered under some other provision of law providing greater punishment[.]" *Id.* Thus, defendant argues that the General Assembly intended the trial court to sentence a defendant under the more punitive statute if more than one crime is implicated by the same conduct. We agree.

In *State v. Ezell*, 159 N.C. App. 103, 109, 582 S.E.2d 679, 684 (2003), this Court held that legislative intent could rebut the presumption created by *Blockburger v. United States*, 284

U.S. 299, 76 L. Ed. 306 (1932), that conviction for two offenses based on the same conduct is not unlawful if each offense requires proof of an element that the other does not. The Court went on to hold that the language "[u]nless the conduct is covered under some other provision of law providing greater punishment" indicated legislative intent to punish certain offenses at a certain level, but that if the same conduct was punishable under a different statute carrying a higher penalty, a defendant could only be sentenced for the more punitive offense. *Id.* at 111, 582 S.E.2d at 685.

Applying the *Ezell* holding in the context of two assault statutes, this Court held in *State v. Williams*, 201 N.C. App. 161, 174, 689 S.E.2d 412, 419 (2009), that even though two assaults may require proof of different elements, so as to be distinct crimes under *Blockburger*, the inclusion of the language "[u]nless the conduct is covered under some other provision of law providing greater punishment" indicated legislative intent to punish a defendant only for the more punitive of the two crimes. The defendant in *Williams* was convicted of both assault by strangulation and assault inflicting serious bodily injury for the same conduct. Thus, because assault by strangulation carried a lesser penalty than assault inflicting serious bodily

injury, the *Williams* Court vacated judgment entered upon the defendant's conviction for assault by strangulation. *Id.* Because the convictions were consolidated at trial, it also remanded for resentencing. *Id.*

Here, like in *Williams*, defendant was convicted for both assault inflicting serious bodily injury and an assault that carried a lesser punishment, specifically here, assault on a female. Based on the *Williams* holding, we conclude that convictions for both crimes violated the statutory mandate that the trial court only sentence a defendant for the more punitive crime implicated by the same conduct. *See In re Civil Penalty*, 324 N.C. 373, 384, 379 S.E.2d 30, 37 (1989) ("[A] panel of the Court of Appeals is bound by a prior decision of another panel of the same court addressing the same question[.]"). Thus, we vacate defendant's conviction for assault on a female, as it is less punitive than assault inflicting serious bodily injury. Furthermore, because the convictions were consolidated, we remand for resentencing. *See Williams*, 201 N.C. App. at 174, 689 S.E.2d at 419.

## Conclusion

We find no error in defense counsel's opening statement and no abuse of discretion in the trial court's decision to reject

defendant's requested instruction on the defense of automatism. However, because the trial court failed to follow the statutory mandate that it only punish defendant under the more punitive assault statute where more than one crime was implicated by the same conduct, we vacate defendant's conviction for assault on a female and remand for resentencing.

NO ERROR IN PART; VACATED IN PART; REMANDED FOR RESENTENCING.

Judges BRYANT and STEELMAN concur.

Report per Rule 30(e).