An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-313

Filed 4 June 2025

Cabarrus County, Nos. 20CRS051099-120, 21CRS050005-120, 21CRS050006-120, 22CRS000693-120

STATE OF NORTH CAROLINA

   v.

LAQUETTE MARSHON KELLY, Defendant.


Appeal by Defendant from judgment entered 23 August 2023 by Judge Mike Adkins in Cabarrus County Superior Court. Heard in the Court of Appeals 5 November 2024.

> *Attorney General Jeff Jackson, by Assistant Attorney General Adrian W. Dellinger, for the State.*
>
> *Everson Law Office, PLLC, by Cynthia E. Everson, for Defendant-Appellant.*


CARPENTER, Judge.

Laquette Marshon Kelly ("Defendant") appeals from judgment entered after a jury found him guilty of two counts of sale of cocaine, one count of possession with intent to sell or deliver cocaine, one count of maintaining a dwelling house for the keeping or selling of controlled substances, and attaining habitual-felon status. On

appeal, Defendant argues the trial court erred by: (1) denying his motion to continue; (2) proceeding with trial in his absence; (3) failing to strike Detective Angel Gonzalez's improper testimony vouching for the credibility of the confidential informant ("Informant"); (4) allowing Detective Gonzalez and Lieutenant John Parker to testify that the substances they observed were crack cocaine; (5) sentencing Defendant as a prior record level IV with ten prior record level points; and (6) sentencing Defendant to three consecutive sentences. After careful review, we conclude Defendant received a fair trial free of prejudicial error.

## I.  Factual & Procedural Background

In 2019, Officer Morris met Informant while on patrol and arranged a meeting between Informant and Detective Gonzales with the Concord Police Department. At first, Detective Gonzalez "didn't really take [Informant] serious[ly] . . . because [he] could tell [Informant] was struggling with addiction and [] was homeless," but when Informant returned about a month later and told Detective Gonzalez "hey, I'm serious, I want to do this with you," they began working together. Informant told Detective Gonzalez that he "[knew] a guy who sells crack on Cedar at Snake's house." Detective Gonzalez knew "Snake" as Melvin Davis, Defendant's father, and knew of Defendant from previous investigations.

On 20 January 2020, Informant participated in a controlled purchase with Defendant. Informant, wearing a recording device, went to Snake's house and told him to, "Call your son" because Informant "need[ed] a [forty]." Snake made a phone

call, and shortly after, Defendant arrived at his father's house. Informant paid Defendant $40.00 for two "rocks" of crack cocaine, which Informant turned over to Detective Gonzalez. On 9 March 2020, Informant participated in another controlled purchase with Defendant. This time, Informant met with Defendant at Defendant's house, and again paid him $40.00 for two "rocks" of crack cocaine, which Informant turned over to Detective Gonzalez.

On 11 March 2020, Lieutenant Parker with the Concord Police Department, sought and obtained a search warrant for Defendant's house based on the two controlled purchases. During the search, officers discovered and seized what appeared to be 9.2 grams of crack cocaine packaged in multiple baggies. The State Crime Lab later confirmed the substances obtained from the controlled purchases and Defendant's house were crack cocaine.

On 13 April 2020, a Cabarrus County grand jury indicted Defendant for one count each of: possession with intent to sell or deliver cocaine; maintaining a dwelling house for the keeping or selling of controlled substances; and manufacture, sale, distribution, or possession of a controlled substance within 1000 feet of a school. On 8 February 2021, a Cabarrus County grand jury indicted Defendant for two counts of sale of cocaine. Then, on 24 October 2022, Defendant was indicted for one count of attaining habitual-felon status.

On or about 28 March 2021, Defendant filed a motion to suppress, arguing the search warrant for his house was not supported by probable cause. In August 2022,

the trial court commenced a hearing on Defendant's motion to suppress, before continuing the hearing without issuing a ruling. On 24 August 2022, Defendant filed a motion for removal of counsel, requesting the trial court remove his court-appointed attorney as counsel of record. The trial court allowed Defendant's motion for removal of counsel and appointed Defendant interim counsel while Defendant sought to retain private counsel. On 26 August 2022, by separate order, the trial court continued Defendant's motion to suppress without prejudice. On 14 April 2023, Defendant moved to join the offense for trial, except for the habitual-felon charge. That same day, the trial court granted Defendant's motion for joinder.

On 21 August 2023, the morning of Defendant's trial, the State moved to introduce evidence of other drug sales by Defendant pursuant to Rule 404(b). The trial court later heard arguments on the State's 404(b) motion during Detective Gonzalez's direct examination. The trial court did not recommence or issue a ruling on Defendant's pretrial motion to suppress.

At the start of trial, Defendant asked the trial court if his appointed counsel could withdraw, stating he "would like to relieve [his appointed counsel] from the case." The trial court responded:

> Now, you have the right to be represented by counsel. You have counsel in place. If you wish to waive that right to counsel then I will hear you why that you think you should be allowed to represent yourself in this matter. If you don't wish to represent yourself and you don't want [your appointed counsel] to represent you and you've had since September the 30th of 2022 to hire a lawyer and you

> haven't done so, then I will hear you why I shouldn't find,
> if you don't want to proceed with [your appointed counsel]
> and proceed with you not having a lawyer. So . . . would you
> rather represent yourself?

Defendant informed the trial court that he wished to hire private counsel, attributing his continuing failure to do so to his financial problems. Following a lengthy discussion, the trial court informed Defendant his trial would begin and he could either: forfeit his right to counsel and proceed on his own, or keep his appointed counsel. Defendant informed the trial court that he had spoken with a lawyer on the phone and arranged a meeting with the lawyer later that day. At 10:00 a.m., the trial court informed Defendant that court would stand in recess until 11:00 a.m., and Defendant had until then to retain private counsel.

When Defendant returned at 11:00 a.m. without a lawyer, explaining he had an appointment to meet with one on Friday, the trial court asked the State if it "wish[ed] to consent to continue [the] case to allow [Defendant] to consult with an attorney on Friday?" The State declined and informed the trial court it was ready to proceed. Eventually, Defendant elected to represent himself and requested a continuance, which the trial court denied. Following another lengthy discussion, Defendant elected to have appointed counsel represent him for trial.

On 22 August 2023, Defendant failed to appear for the second day of trial. The trial court noted Defendant's absence and stated that trial would proceed. The trial court overruled appointed counsel's objection to proceeding with trial in Defendant's

absence and found that "[Defendant's] absence is voluntary and willful." The trial court further found that "since [Defendant] has chosen to absent himself from the proceedings and his absence is voluntary, under the law, we can proceed."

At the close of the State's evidence, appointed counsel moved to dismiss the charges against Defendant for insufficient evidence. The trial court denied Defendant's motion. Appointed counsel then informed the trial court there would be no evidence from the defense and renewed the motion to dismiss. Again, the trial court denied the motion, and the State voluntarily dismissed the charge of manufacture, sale, distribution, or possession of a controlled substance within 1000 feet of a school.

The jury found Defendant guilty of two counts of sale of cocaine, one count of possession with intent to sell or deliver cocaine, and one count of knowingly maintaining a dwelling house for the keeping or selling of controlled substances. The jury also found that Defendant had attained habitual-felon status.

On 28 August 2023, the trial court found that Defendant had a prior record level of IV with ten prior record level points. Accordingly, the trial court sentenced Defendant to:

> a minimum term of 97 months and a maximum term of 129 months in custody for possession with intent to sell or deliver cocaine
>
> a minimum term of 110 months and a maximum term of 144 months in custody for sell of cocaine, to begin at the

conclusion of Defendant's sentence for possession with intent to sell or deliver [and]

a minimum term of 110 months and a maximum term of 144 months in custody for one count of sell of cocaine, to begin at the conclusion of Defendants sentence for the other count of sell of cocaine.

Defendant appeared remotely for the sentencing hearing and gave notice of appeal in open court.

## II. Jurisdiction

This Court has jurisdiction under N.C. Gen. Stat. §§ 7A-27(b)(1) and 15A-1444(e) (2023).

## III. Issues

The issues are whether the trial court erred by: (1) denying Defendant's motion to continue; (2) proceeding with trial in Defendant's absence; (3) failing to strike Detective Gonzalez's improper testimony vouching for the credibility of Informant; (4) allowing Detective Gonzalez and Lieutenant Parker to testify that the substances they observed were crack cocaine; (5) sentencing Defendant as a prior record level IV with ten prior record level points; and (6) sentencing Defendant to three consecutive sentences.

## IV. Analysis

### A. Motion to Continue

First, Defendant argues the trial court erred by denying his motion to continue. In support of his argument, Defendant advances four reasons why the trial court

should have granted his motion to continue: (1) Defendant's pretrial motion to suppress remained unresolved; (2) the State filed a Rule 404(b) motion regarding other drug sales immediately before trial; (3) Defendant did not have notice or an opportunity to object to the State's motion to join the offenses for trial;[1] and (4) an actual conflict existed between Defendant and his appointed counsel.

### 1. Preservation

As an initial matter, we address whether Defendant's arguments are properly preserved for our review. To preserve an issue for appeal, "a party must have presented to the trial court a timely request, objection, or motion, stating the specific grounds for the ruling the party desired the court to make if the specific grounds were not apparent from the context." N.C. R. App. P. 10(a)(1). Indeed, "where a theory argued on appeal was not raised before the trial court, 'the law does not permit parties to swap horses between courts in order to get a better mount in the [reviewing court].'" *State v. Sharpe*, 344 N.C. 190, 194, 473 S.E.2d 3, 5 (1996) (quoting *Weil v. Herring*, 207 N.C. 6, 10, 175 S.E. 836, 838 (1934)). Specifically, "[c]onstitutional issues, which are not raised and ruled upon at trial, will not be considered for the first time on appeal." *State v. Ellis*, 205 N.C. App. 650, 654, 696 S.E.2d 536, 539 (2010) (citing *State v. Lloyd*, 354 N.C. 76, 86–87, 552 S.E.2d 596, 607 (2001)).

---

[1] In his brief, Defendant asserts he did not have notice or an opportunity to object to the *State's* motion to join the offenses for trial. The record, however, indicates *Defendant*, not the State, moved to join the offenses for trial.

Here, when Defendant requested the continuance, he stated: "I'm going to represent myself and ask for a continuance." Although Defendant did not explicitly state his reasoning, his request followed several lengthy discussions with the trial court concerning Defendant's general dissatisfaction with his appointed counsel and his desire to retain private counsel. During those discussions, Defendant noted he had not met with his appointed counsel to discuss trial strategy or the status of his pretrial motions. He also mentioned a series of text messages between his appointed counsel and Defendant's wife that Defendant believed were inappropriate. Additionally, before requesting the continuance, Defendant made several remarks regarding his right to counsel, including: "So you're denying my right to counsel?" and "I wish the right to counsel." Further, after denying the continuance, the trial court noted Defendant had "indicated his desire to represent himself" and began questioning Defendant to ensure he was capable of doing so. During this colloquy Defendant stated:

> I understand my rights are being violated by not having a right to counsel, and I'm asking you to give me right to counsel. My rights are being violated. We got a lawyer that's not going to represent me, and you know he's not going to represent me. He just told you that. You're still denying my right to counsel, so you're violating my rights, right, if I got any, right? 14th Amendment, 13th, one of them, right, being violated here, right?

Although Defendant did not specifically state the grounds for his motion to continue, one of his arguments is apparent from the context: the denial of his right to

counsel. *See* N.C. R. App. 10(a)(1). Therefore, this argument is preserved for our review. Defendant's remaining arguments, however, were not raised before the trial court. Accordingly, they are not preserved and we will not address them.

## 2. Standard of Review

"In most circumstances, a motion to continue is addressed to the sound discretion of the trial court, and absent a manifest abuse of that discretion, the trial court's ruling is not reviewable." *State v. Rogers*, 352 N.C. 119, 124, 529 S.E.2d 671, 674–75 (2000) (citing *State v. Walls*, 342 N.C. 1, 463 S.E.2d 738 (1995), *cert. denied,* 517 U.S. 1197, 116 S. Ct. 1694, 134 L. Ed. 2d 794 (1996)). "However, when a motion to continue raises a constitutional issue . . . the trial court's ruling is 'fully reviewable by an examination of the particular circumstances of each case.'" *Id.* at 124, 529 S.E.2d at 675 (quoting *State v. Searles*, 304 N.C. 149, 153, 282 S.E.2d 430, 433 (1981)). "Generally, the denial of a motion to continue, whether a constitutional issue is raised or not, is sufficient grounds for the granting of a new trial only when the defendant is able to show that the denial was erroneous and that he suffered prejudice as a result of the error." *Id.* at 124, 529 S.E.2d at 675 (citing *State v. Branch*, 306 N.C. 101, 291 S.E.2d 653 (1982)).

## 3. Discussion

Defendant argues his motion to continue should have been granted because he was denied the right to counsel. Specifically, Defendant asserts his right to counsel

was violated because "an actual conflict existed between [him] and his attorney." We disagree with Defendant.

The Sixth and Fourteenth Amendments of United States Constitution and Article I of the North Carolina Constitution guarantees a criminal defendant the right to counsel. *See State v. Montgomery*, 138 N.C. App. 521, 524, 530 S.E.2d 66, 68 (2000); U.S. Const. amend. VI; N.C. Const. art I, § 23. This right includes, among other things, the right to: conflict-free counsel, *see State v. Bruton*, 344 N.C. 381, 391, 474 S.E.2d 336, 343 (1996), effective assistance of counsel, *see State v. Todd*, 369 N.C. 707, 710, 799 S.E.2d 834, 837, private counsel of the defendant's choice, *see Montgomery*, 138 N.C. App. at 524, 530 S.E.2d at 68, and, if indigent, appointed counsel, *see id*. at 524, 530 S.E.2d at 68.

Defendant's argument concerns the first of these: the right to conflict-free counsel. Defendant points to his dissatisfaction with appointed counsel's performance, text messages between appointed counsel and Defendant's wife, and appointed counsel's requests to withdraw as support for his assertion that an "actual conflict" existed. Defendant's assertion appears to confuse "conflict" in the general sense—a mere disagreement or dissatisfaction with another person—with a "conflict of interest" as specifically defined by law. *See State v. Mims*, 180 N.C. App. 403, 409, 637 S.E.2d 244, 248 (2006) (explaining "[t]he right to counsel includes a right to 'representation that is free from *conflicts of interest*'") (quoting *Wood v. Georgia*, 450 U.S. 261, 271, 101 S. Ct. 1097, 1103, 67 L. Ed. 2d 220, 230 (1981) (emphasis added)).

Further, although Defendant's assertions might flow more naturally as a denial of his right to retain private counsel of his choosing, *see Montgomery*, 138 N.C. App. at 524, 530 S.E.2d at 68, Defendant did not assert as much. By failing to argue his right to counsel was violated because he was denied the right to seek private counsel of his choosing, Defendant abandoned this argument. *See State v. Robinson*, 292 N.C. App. 355, 358, 897 S.E.2d 545, 549 (2024); N.C. R. App. P. 28. Instead, Defendant maintains the trial court abused its discretion by denying his motion to continue because the trial court was on notice that an "actual conflict" existed and failed to conduct an adequate inquiry in response. This argument is without merit.

A true conflict of interest arises where " 'the representation of one client will be directly adverse to another client' or 'the representation of one or more clients may be materially limited by the lawyer's responsibilities to another client, a former client, or a third person, or by a personal interest of the lawyer.' " *State v. Lynch*, 275 N.C. App. 296, 299, 852 S.E.2d 924, 927 (2020) (quoting N.C. R. Pro. Conduct 1.7(a) (2019)). If the trial court is on notice of a "conflict of interest," it is required to conduct an inquiry into the conflict. *See State v. Williams*, 285 N.C. App. 215, 232–34, 877 S.E.2d 105, 120 (2022).

Generally speaking, our cases addressing this issue concern "conflicts of interest" related to a lawyer's "multiple representation," not personal disagreements between lawyers and clients. *See State v. Choudhry*, 365 N.C. 215, 219, 717 S.E.2d 348, 352 (2011) (explaining that when a defendant alleges a violation of his right to

counsel "based upon an *actual,* as opposed to a potential, conflict of interest *arising out of an attorney's multiple representation*, a defendant may not be required to demonstrate prejudice under *Strickland* to obtain relief") (citing *Strickland v. Washington*, 466 U.S. 668, 692, 104 S. Ct. 2052, 2067, 80 L. Ed. 2d 674, 696 (1984)) (emphases added).

In the instant case, the trial court was not on notice of a "conflict of interest" because no "conflict of interest" existed. The only conceivable way a "conflict of interest" could exist under these circumstances, is if appointed counsel's representation was "materially limited by a personal interest." *See Lynch*, 275 N.C. App. at 299, 852 S.E.2d at 927. Stated differently, it would need to be apparent that appointed counsel's personal feelings about Defendant were so incredibly negative that appointed counsel's representation was at risk of being compromised. *See id.* at 299, 852 S.E.2d at 927. But that is not what occurred here. In the instant case, Defendant's appointed counsel was present, prepared, and actively advocated on Defendant's behalf. Granted, appointed counsel formally requested to withdraw, but he only attempted to do so after Defendant asked the trial court to relieve appointed counsel from the case. Therefore, no "conflict of interest" existed and Defendant cannot show that his right to counsel was violated on this basis. The trial court's denial of Defendant's motion to continue on the grounds there was an "actual conflict" between him and his appointed counsel was not erroneous, much less prejudicial. *See*

*Rogers*, 352 N.C. at 124, 529 S.E.2d at 674–75. Accordingly, the trial court did not abuse its discretion by denying Defendant's motion to continue.

## B. Defendant's Absence from Trial

Next, Defendant asserts the trial court erred by proceeding with trial in his absence. We disagree with Defendant.

"In every criminal prosecution it is the right of the accused to be present throughout the trial, unless he waives the right." *State v. Pope*, 257 N.C. 326, 330, 126 S.E.2d 126, 129 (1962). Waiver is not possible for a criminal defendant charged with a capital offense. *State v. Wilson*, 31 N.C. App. 323, 326, 229 S.E.2d 314, 317 (1976). On the other hand, a criminal defendant charged with a noncapital felony or a misdemeanor may waive his right to be present at trial. *Id.* at 326, 229 S.E.2d at 317. Notably, a criminal defendant's " 'voluntary and unexplained absence from court' " constitutes a waiver of this right. *State v. Davis*, 186 N.C. App. 242, 243, 650 S.E.2d 612, 614 (2007) (quoting *State v. Richardson*, 330 N.C. 174, 178, 410 S.E.2d 61, 63 (1991)). Further, the burden "is on the defendant to explain his absence . . . ." *State v. Austin*, 75 N.C. App. 338, 341, 330 S.E.2d 661, 663 (1985).

Here, Defendant was present for the first day of his trial but failed to appear thereafter. Not only does the record indicate Defendant was informed that his trial would continue the next day, Defendant also failed to provide an explanation for his absence. Therefore, the trial court properly concluded Defendant's absence was voluntary and constituted a waiver of his right to be present at trial. *See Davis*, 186

N.C. App. at 243, 650 S.E.2d at 614; *Austin*, 75 N.C. App. at 342, 330 S.E.2d at 663. Accordingly, the trial court did not err by proceeding with trial in Defendant's absence.

### C. Failure to Strike Testimony

Next, Defendant asserts the trial court's failure to strike Detective Gonzalez's improper testimony vouching for Informant's credibility constituted plain error. Defendant seems to overlook, however, that the trial court sustained his relevant objections. Therefore, the trial court did not err because the challenged testimony was not admitted.

### 1. Standard of Review

As previously mentioned, "a party must have presented to the trial court a timely, request, objection, or motion, stating the specific grounds for the ruling the party desired the court to make if the specific grounds were not apparent from the context." N.C. R. App. P. 10(a)(1). In particular, a defendant's failure to secure a ruling on a motion to strike "waiv[es] [his] right to assert error." *State v. Taylor*, 344 N.C. 31, 44, 473 S.E.2d 596, 604 (1996) (citing *State v. Barton*, 335 N.C. 696, 709–10, 441 S.E.2d 295, 302 (1994)); *see also State v. Nobles*, 350 N.C. 483, 499, 515 S.E.2d 885, 895 (1999) ("When the trial court sustains an objection, the objecting party has no basis for appeal absent a motion to strike or a request for a curative instruction.").

In a criminal case, however, "this Court may elect to review [certain] unpreserved issues for plain error, if specifically and distinctly contented to amount

to plain error . . . ." *State v. Gregory*, 342 N.C. 580, 584, 467 S.E.2d 28, 31 (1996); *see State v. Lawrence*, 365 N.C. 506, 516, 723 S.E.2d 326, 333 (2012) (explaining "plain error review . . . is normally limited to instructional and evidentiary error").

To establish plain error, a defendant must pass a three-part test:

> First, the defendant must show that a fundamental error occurred at trial. Second, the defendant must show that the error had a probable impact on the outcome, meaning that absent the error, the jury probably would have returned a different verdict. Finally, the defendant must show that the error is an exceptional case that warrants plain error review, typically by showing that the error seriously affects the fairness, integrity or public reputation of judicial proceedings.

*State v. Reber*, 386 N.C. 153, 158, 900 S.E.2d 781, 786 (2024) (citations and quotation marks omitted).

" 'A prerequisite to our engaging in 'plain error' analysis is the determination that the [evidence] complained of constitutes 'error' at all.' " *State v. Bailey*, 157 N.C. App. 80, 84, 577 S.E.2d 683, 687 (2003) (quoting *State v. Torain*, 316 N.C. 111, 116, 340 S.E.2d 465, 468 (1986) (citation omitted)).

Here, Defendant takes issue with the following testimony from Detective Gonzalez, elicited from the State:

> **The State:** Do you believe that [Informant] is a credible person?
> **Witness:** Yes.
> **Appointed counsel:** Objection.
> **Trial Court:** Sustained.
> **Appointed counsel:** Move to - -
> **Trial Court:** Sustained as to the conclusion . . .

. . .

> **The State:** And [Informant], was he always cooperative with you?
> **Witness:** Yes, he was. But more importantly, he was always honest with me, and, you know, I'm not in uniform so he -- I understand what addiction is and --
> **Appointed counsel:** Objection. He answered the question.
> **Trial Court**: I'll sustain that.

Defendant lodged a timely objection to Detective Gonzalez's testimony that Informant was a credible person. Defendant also objected to Detective Gonzalez's testimony that Informant was cooperative and honest on the grounds Detective Gonzalez had already answered the question. The trial court sustained both of Defendant's objections. Although it appears Defendant attempted to move to strike the first portion of the elicited testimony, he was not successful in doing so. As for the second portion of Detective Gonzalez's testimony, Defendant did not move to strike. Thus, Defendant's evidentiary challenge is not properly preserved for our review. Because Defendant "specifically and distinctly" argues plain error, we review for plain error. *See Gregory*, 432 N.C. at 584, 467 S.E.2d at 31.

## 2. Discussion

Under plain-error review, we first consider whether the admission of the evidence Defendant complains of constituted error. *See Bailey*, 157 N.C. App. at 84, 577 S.E.2d at 687. Under Rule 608, "[s]pecific instances of the conduct of a witness, for the purpose of attacking or supporting his credibility . . . may not be proved by extrinsic evidence." N.C. Gen. Stat. § 8C-1, Rule 608(b) (2023). "Extrinsic evidence

within the meaning of this rule is 'evidence that is calculated to impeach [or support] a witness's credibility, adduced by means other than cross-examination of the witness.'" *State v. Lee*, 189 N.C. App. 474, 478, 658 S.E.2d 294, 298 (2008). Moreover, "it is typically improper for a party to seek to have [] witnesses vouch for the veracity of another witness . . . ." *State v. Caballero*, 383 N.C. 464, 475, 880 S.E.2d 661, 669 (2022) (quoting *State v. Warden*, 376 N.C. 503, 507, 852 S.E.2d 184, 188 (2020)) (alteration in original).

Even if we were to assume that Detective Gonzalez's testimony was improper, we are unable to discern how the trial court erred, given that it sustained Defendant's relevant objections. Detective Gonzalez's testimony, which Defendant argues constituted improper vouching, was deemed inadmissible by the trial court. Thus, Defendant's assignment of error was not error at all, as Defendant secured his desired outcome through the very ruling he now challenges. Stated differently, even if we were to agree with Defendant that Detective Gonzalez's testimony was improper, we cannot say the trial court erred because it sustained Defendant's objections.

In any event, Defendant has not established that the trial court's failure to strike the improper testimony was prejudicial. At the beginning of Defendant's trial, the trial court gave a general instruction to the jury, stating:

> *It is the right of the attorneys to object when testimony or other evidence is offered that the attorney believes is not admissible. When the [c]ourt sustains an objection to a question, the jurors must disregard the question and answer if one has been given and draw no inference from*

*the question or answer or speculate as to what the witness would have said if permitted to answer.* When the [c]ourt overrules an objection to any evidence, you must not give such evidence any more weight than if the objection had not been made. If the [c]ourt grants a motion to strike all or part of the answer of the witness to a question, you must disregard and not consider the evidence that was stricken.

As in *State v. Strickland*, the trial court's general instruction "prevent[ed] any prejudicial effect produced by the failure to strike the improper testimony." *See* 153 N.C. App. 581, 591, 570 S.E.2d 898 905 (2002) (holding "[s]ince the trial court sustained [the] defendant's objection, it had no duty to strike the testimony or issue a curative instruction"). Accordingly, the trial court did not err by failing to strike Detective Gonzalez's testimony, much less plainly or prejudicially err.

**D. Nature of Substance**

In his fourth argument, Defendant asserts the trial court erred by allowing Detective Gonzalez and Lieutenant Parker to testify that the substances obtained from the controlled purchases and the search of Defendant's house were crack cocaine. We disagree with Defendant.

"In the context of a controlled substances case, 'the burden is on the State to establish the identity of any alleged controlled substance that is the basis of the prosecution.'" *State v. Carter*, 255 N.C. App. 104, 106, 803 S.E.2d 464, 466 (2017) (quoting *State v. Ward*, 364 N.C. 133, 147, 694 S.E.2d 738, 747 (2010)). In seeking to identify a particular substance, "the State is required to present either a scientifically valid chemical analysis of the substance in question or some other sufficiently reliable

method of identification." *Id.* at 107, 694 S.E.2d at 466–67 (citing *State v. Hanif*, 228 N.C. App. 207, 212, 743 S.E.2d 690, 693 (2013)). "[T]estimony identifying a controlled substance based on visual inspection—whether presented as expert or lay opinion— is inadmissible." *Id.* at 107, 694 S.E.2d at 467.

Here, Defendant did not object when Detective Gonzalez and Lieutenant Parker testified that the substances obtained from the controlled purchases and the search were crack cocaine. Therefore, this argument is unpreserved. *See* N.C. R. App. P. 10(a)(1). Defendant has, however, "specifically and distinctly" contended the admission of this testimony constituted plain error, so we review for plain error. *See Gregory*, 432 N.C. at 584, 467 S.E.2d at 31.

Even if we were to assume that the admission of the testimony was error, Defendant has not established that the error constituted plain error. Catherine Hauenstein, a forensic scientist in the drug chemistry section at the North Carolina State Crime Lab, was tendered as an expert in forensic chemistry and testified that the substances obtained from the controlled purchases and the search were, in fact, crack cocaine. Further, Informant testified that the substances he purchased from Defendant were crack cocaine. Considering this testimony, and the other evidence demonstrating Defendant's guilt, we cannot say that absent the officers' testimony the jury "almost certainly" would have returned a different verdict. *See Reber*, 386 N.C. at 158, 900 S.E.2d at 786. Accordingly, the trial court did not plainly err by admitting the testimony.

**E. Prior Record Level Points**

In his fifth argument, Defendant asserts the trial court erred by sentencing him as a prior record level IV with ten prior record level points. Specifically, he argues the trial court incorrectly added an extra point based on section 15A-1340.14(b)(6). We disagree with Defendant.

"The determination of a defendant's prior record level for sentencing purposes is subject to *de novo* review." *State v. Braswell*, 269 N.C. App. 309, 312, 837 S.E.2d 580, 583 (2020). "If all the elements of the present offense are included in any prior offense for which the offender was convicted, whether or not the prior offense or offenses were used in determining prior record level," an additional point should be added to a defendant's prior record level. *See* N.C. Gen. Stat. § 15A-1340.14(b)(6) (2023).

Here, the trial court added an extra point to Defendant's prior record level based on section 15A-1340.14(b)(6). One of Defendant's convictions in the instant case was for possession with intent to sell or deliver cocaine. Previously, on 28 February 2005, in case number 02 CRS 55245, Defendant was convicted of possession with intent to sell or deliver cocaine. Because the elements of a current offense are present in a prior offense, the trial court properly added the extra point. *See* N.C. Gen. Stat. § 15A-1340.14(b)(6). Accordingly, the trial court did not err by sentencing Defendant as a prior record level IV with ten prior record level points.

**F. Consecutive Sentences**

Finally, Defendant argues the trial court abused its discretion by sentencing him to three consecutive sentences. We disagree with Defendant.

Defendant alleges that prior to trial, the trial court told Defendant that if the jury convicted him, it would sentence him to three consecutive sentences at the top of the presumptive range on each count. According to Defendant, by making this alleged statement, the trial court was attempting to persuade Defendant against exercising his constitutional right to a trial by jury.

"[T]he decision to impose consecutive or concurrent sentences is within the discretion of the trial judge and will not be overturned absent a showing of abuse of discretion." *State v. Espinoza-Valenzuela*, 203 N.C. App. 485, 497, 692 S.E.2d 145, 154 (2010). "Abuse of discretion results where the court's ruling is manifestly unsupported by reason or is so arbitrary that it could not have been the result of a reasoned decision." *State v. Campbell*, 359 N.C. 644, 673, 617 S.E.2d 1, 19 (2005) (citation omitted).

A trial court cannot "impose upon the defendant an additional penalty or enlargement of his sentence" in response to a defendant's decision to exercise his right to a trial by jury. *State v. Pickens*, 385 N.C. 351, 360, 893 S.E.2d 194, 201 (2023). If it can be "reasonably inferred from the language of the trial judge that the sentence was imposed at least in part because defendant did not agree to a plea offer by the [S]tate and insisted on a trial by jury, defendant's constitutional right to a trial by jury has been abridged, and a new sentencing hearing must result." *State v. Cannon*,

326 N.C. 37, 39, 387 S.E.2d 450, 451 (1990) (citing *State v. Boone*, 293 N.C. 702, 239 S.E.2d 459 (1977)).

Here, the record is devoid of any such statement by the trial court. Further, the record does not include any other statement from which it could "reasonably inferred" that the trial court imposed the consecutive sentences as a penalty for Defendant exercising his right to trial by jury. *See Cannon*, 326 N.C. at 39, 387 S.E.2d at 451. Thus, Defendant's argument that the trial court imposed the consecutive sentences on an improper basis is without merit. Accordingly, the trial court did not abuse its discretion by sentencing Defendant to three consecutive sentences.

## V. Conclusion

In sum, the trial court did not err by proceeding with trial in Defendant's absence or sentencing Defendant as a prior record level IV with ten prior record level points. The trial court did not err and certainly did not plainly or prejudicially err by failing to strike Detective Gonzalez's testimony vouching for the credibility of Informant and did not plainly err by allowing Detective Gonzalez and Lieutenant Parker to testify that the substances they observed were crack cocaine. Finally, the trial court did not abuse its discretion by denying Defendant's motion to continue or sentencing Defendant to three consecutive sentences.

NO ERROR IN PART; NO PLAIN ERROR IN PART.

Judges STROUD and ZACHARY concur.

Report per Rule 30(e).